United States District Court
Southern District of Texas

**ENTERED**

August 19, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IBEROAMERICANA DE            §
HIDROCARBUROS S.A.,          §
                             §
            Plaintiff,       §
                             §
v.                           §      CIVIL ACTION NO. H-21-1840
                             §
EXTERRAN CORPORATION;        §
EXTERRAN ENERGY SOLUTIONS,   §
L.P.; and ANDREW WAY,        §
                             §
            Defendants.      §

## MEMORANDUM OPINION AND ORDER

Plaintiff Iberoamericana de Hidrocarburos S.A. ("Plaintiff" or "IHSA") asserts claims for tortious interference against defendants Exterran Corporation ("Exterran Corp."), Exterran Energy Solutions, L.P. ("Exterran L.P.") (jointly, "Exterran"), and Andrew Way ("Way") (collectively, "Defendants").[1]  Pending before the court are Exterran Energy Solutions, L.P.'s [and Exterran Corporation's] Motion to Compel Arbitration ("Exterran's Motion to Compel") (Docket Entry No. 4) and Plaintiff's Motion to Remand (Docket Entry No. 12).  Plaintiff has asked that the court rule on Exterran's Motion to Compel before addressing Plaintiff's Motion to Remand.[2]

_____

[1]Plaintiff's Original Complaint, Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1, p. 2.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Plaintiff's Unopposed Motion for Extension of Certain Deadlines, Docket Entry No. 8, p. 3 ¶ 8; Order on Plaintiff's
(continued...)

Exterran, L.P. and Exterran Corp. have also filed Defendant
Exterran Energy Solutions LP and Exterran Corp.'s Motion to Dismiss
("Exterran's Motion to Dismiss") (Docket Entry No. 5); and Way has
filed Defendant Andrew Way's Motion to Dismiss or, Alternatively,
Stay Pending Arbitration ("Way's Motion to Dismiss") (Docket Entry
No. 6). The parties have jointly requested that the court address
Exterran's Motion to Compel before ruling on Exterran's Motion to
Dismiss; and Plaintiff has asked that the court address Exterran's
Motion to Compel before ruling on Way's Motion to Dismiss.[3] For
the reasons explained below, Exterran's Motion to Compel will be
granted.

## I. **Factual and Procedural Background**

Plaintiff is a Mexican corporation.[4] Defendants Exterran
Corp. and Exterran L.P. are both organized in Delaware, with their
principal places of business in Houston, Texas.[5] Way is CEO,

---

[2](...continued)
Unopposed Motion for Extension of Certain Deadlines, Docket Entry
No. 9, p. 1 ¶ c.

[3]Exterran's Motion to Dismiss, Docket Entry No. 5, p. 5 n.1;
Plaintiff's Unopposed Motion for Extension of Certain Deadlines,
Docket Entry No. 8, p. 2 ¶¶ 6-7; Order on Plaintiff's Unopposed
Motion for Extension of Certain Deadlines, Docket Entry No. 9, p. 1
¶ b.

[4]Plaintiff's Original Complaint, Exhibit A to Defendants'
Notice of Removal, Docket Entry No. 1-1, p. 3 ¶ 1; Exterran's
Motion to Compel, Docket Entry No. 4, p. 7.

[5]Plaintiff's Original Complaint, Exhibit A to Defendants'
Notice of Removal, Docket Entry No. 1-1, p. 3 ¶¶ 2-3.

President, and Director of Exterran Corp. and President of Exterran L.P.[6]  At all material times Exterran Corp. and Way, through Exterran L.P., controlled Exterran Energy de Mexico S.A. de C.V. ("Exterran Mexico"),[7] which is not a defendant.

Exterran asserts, and Plaintiff does not deny, that Plaintiff and Exterran Mexico are parties to two contracts concerning gas conditioning and compression services at the Nejo 1, 2, and 3 substations and the operation of gas plants in northeast Mexico (collectively, the "Nejo Plants").[8]  Plaintiff operates the Nejo Plants under a 2017 concession from Petróleos Mexicanos ("PEMEX"), the Mexican national oil company.[9]  The first contract between Exterran Mexico and Plaintiff was signed on April 1, 2010, and related to the centralized compression of gas for the Nejo Field

---

[6]Id. ¶ 4.

[7]Id. at 4 ¶ 8; see also Second Declaration of Heinz Weidmann Pursuant to 28 U.S.C. § 1746, Exhibit A to Exterran's Motion to Compel, Docket Entry No. 4-1, p. 1 ¶¶ 5-6 (stating that "Exterran Mexico is an indirect subsidiary of Exterran Energy Solutions, LP" and "Exterran Energy Solutions, LP is an indirect subsidiary of Exterran Corporation.").

[8]Exterran's Motion to Compel, Docket Entry No. 4, p. 7.

[9]Id.; see also Plaintiff's Original Complaint, Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1, p. 4 ¶ 7 ("The Country of Mexico granted PEMEX the surface rights of certain property in the Nejo Field . . . . PEMEX [] also granted IHSA the right to construct and maintain gas plants to refine the oil and gas produced.  PEMEX contractually granted IHSA possession of the land, where the wells and infrastructure for oil and gas production were built.").

-3-

(the "Compression Contract").[10] The second contract was signed on June 16, 2017, and modified three separate, previously existing contracts between Plaintiff and Exterran Mexico for gas conditioning services at the Nejo Plants (the "Conditioning Contract").[11]

The Contracts contain essentially identical dispute-resolution clauses mandating arbitration before the International Chamber of Commerce ("ICC") of "any dispute or claim arising from the performance, interpretation, or breach" of the Contracts.[12] In addition to the arbitration clauses in the Contracts, Plaintiff is subject to the arbitration provision of a sales agreement that it signed with Exterran, L.P. on January 15, 2020 (the "2020 Sales Agreement" and, together with the Compression and Conditioning

[10]Compression Contract, Exhibit B to Defendants' Notice of Removal, Docket Entry No. 1-2, p. 34 (bearing signatures of the parties' legal representatives and showing the date in Day/Month/Year format); see also Certified English Translation of Compression Contract Excerpts, Exhibit D to Exterran's Motion to Compel, Docket Entry No. 4-4.

[11]Conditioning Contract, Exhibit C to Defendants' Notice of Removal, Docket Entry No. 1-3, p. 58 (showing signatures of the parties' legal representatives and the date as "16 del mes de Junio de 2017"); see also Certified English Translation of Conditioning Contract Excerpts, Exhibit E to Exterran's Motion to Compel, Docket Entry No. 4-5.

[12]Certified English Translation of Compression Contract Excerpts, Exhibit D to Exterran's Motion to Compel, Docket Entry No. 4-4, p. 5; Certified English Translation of Conditioning Contract Excerpts, Exhibit E to Exterran's Motion to Compel, Docket Entry No. 4-5, p. 5.

-4-

Contracts, the "Contracts").[13]  That agreement, which concerns the sale of equipment for the gas conditioning plant at Nejo Plant No. 1, provides that "[i]n the event of a dispute, this Agreement shall be submitted to the conciliation, arbitration, jurisdiction, and applicable law set forth in section 35 of the [Conditioning Contract]."[14]

On November 13, 2020, Exterran Mexico filed a criminal complaint against Plaintiff with a Ministerio Publico (MP) in Matamoros, Mexico, alleging among other things that Plaintiff had denied Exterran Mexico's rights under the Contracts by prohibiting Exterran Mexico employees from accessing the Nejo Plants and the equipment and infrastructure therein.[15]  Exterran Mexico filed a second criminal complaint in December of 2020, which, like the previous complaint, relied on its rights under the Contracts to allege that Plaintiff had committed a criminal act.[16]

Acting on the criminal complaint, the MP issued a sequester order that Plaintiff claims "froze all activity in the field,

---

[13]2020 Sales Agreement, Exhibit E to Defendants' Notice of Removal, Docket Entry No. 1-5.

[14]Id. at 8 ¶ 14.

[15]Certified English Translation of First Complaint of Facts, Exhibit F to Exterran's Motion to Compel, Docket Entry No. 4-6, pp. 9-12, FACTS ¶¶ I.1-4.

[16]Certified English Translation of Second Complaint of Facts, Exhibit G to Exterran's Motion to Compel, Docket Entry No. 4-7, p. 4 ¶ 2 (stating that the Contracts established Exterran's ownership of the equipment and infrastructure that Plaintiff was allegedly preventing Exterran from accessing).

thereby preventing [Plaintiff] from entering the field, and [Plaintiff] could not perform its contractual duties to PEMEX."[17] Plaintiff contends that the sequester order was quashed, only to be replaced by another sequester order when Defendants directed Exterran Mexico to file another criminal complaint.[18]

Exterran asserts, and Plaintiff does not deny, that on December 19, 2020, Exterran Mexico filed a request for arbitration against Plaintiff with the ICC.[19] The request alleged that Plaintiff breached the Contracts by failing to pay fees due under the Contracts.[20] On February 22, 2021, Exterran Mexico amended its arbitration request to add Exterran, L.P. as a party.[21] The arbitration is ongoing.[22]

---

[17]Plaintiff's Opposition to Exterran Energy Solution, LP's Motion to Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 13, p. 4.

[18]Id. at 4-5.

[19]Exterran's Motion to Compel, Docket Entry No. 4, p. 10.

[20]Id.

[21]Exterran's Motion to Compel, Docket Entry No. 4, p. 10; see also Exterran Energy de México, S. de R.L. de C.V. y Exterran Energy Solutions, L.P. v. Iberoamericana de Hidrocarburos, S.A. de C.V., ICC Case No. 25918/JPA, In the Court of Arbitration of the International Chamber of Commerce (attached as Exhibit F to Defendants' Notice of Removal, Docket Entry No. 1-6).

[22]Exterran's Motion to Compel, Docket Entry No. 4, p. 10; Exterran Energy de México, S. de R.L. de C.V. y Exterran Energy Solutions, L.P. v. Iberoamericana de Hidrocarburos, S.A. de C.V., ICC Case No. 25918/JPA, In the Court of Arbitration of the International Chamber of Commerce (attached as Exhibit F to Defendants' Notice of Removal, Docket Entry No. 1-6).

On December 29, 2020, Plaintiff sued Defendants in the 129th District Court of Harris County, Texas.[23]  Plaintiff's petition asserted that Plaintiff had a contractual relationship with PEMEX under which PEMEX granted Plaintiff possession of land in the Nejo Fields and Plaintiff agreed to develop and maintain infrastructure therein.[24]  Plaintiff alleged that Defendants tortiously interfered with this contractual relationship by obtaining the MP's Order.[25]

On February 8, 2021, Exterran filed simultaneous motions to compel arbitration and dismiss IHSA's claims.[26]  On March 3, 2021, "[h]aving been advised that [Plaintiff] no longer wishes to pursue its claims against Exterran Energy Solutions, L.P. and Andrew Way," the Honorable Lynn N. Hughes dismissed the case without prejudice.[27]

On May 10, 2021, Plaintiff filed this action in the 164th Judicial District Court of Harris County, Texas,[28] bringing

---

[23]Iberoamericana de Hidrocarburos S.A. v. Exterran Energy Solutions, L.P. et al, 4:21-CV-00329, Plaintiff's Original Petition, Exhibit A-1 to Defendants' Notice of Removal from the 129th Harris County District Court, Docket Entry No. 1-5 (note that this entry is found in a separate CM/ECF docket).

[24]Id. at 4 ¶¶ 8-10.

[25]Id. at 10 ¶ 43.

[26]Iberoamericana de Hidrocarburos S.A. v. Exterran Energy Solutions, L.P., et al., 4:21-CV-00329, Exterran Energy Solutions, L.P.'s Motion to Compel Arbitration, Docket Entry No. 7; Defendant Exterran Energy Solutions, L.P.'s Motion to Dismiss, Docket Entry No. 8.

[27]Iberoamericana de Hidrocarburos S.A. v. Exterran Energy Solutions, L.P., et al., 4:21-CV-00329, Final Dismissal, Docket Entry No. 14.

[28]Plaintiff's Original Complaint, Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1.

essentially the same tortious interference claim that it voluntarily dismissed in March of 2021. Plaintiff alleges that Defendants directed Exterran Mexico to file the criminal complaints and that the complaints led to the issuance of sequester orders that prevented Plaintiff from performing its contractual duties to PEMEX.[29]

Plaintiff asserted a counterclaim in the ongoing ICC arbitration, alleging among other things that the criminal complaints and the resultant site seizures by Mexican authorities prevented Plaintiff from accessing the Nejo 1 Plant and thus prevented Plaintiff from maintaining and developing equipment there.[30]   In other words, Plaintiff asserts essentially the same allegation in its arbitration counterclaim as it brings in its live complaint.

On June 7, 2021, Defendants removed Plaintiff's state court suit to this court pursuant to 9 U.S.C. § 205.[31]  On June 14, 2021, Exterran filed the pending Motion to Compel Arbitration.[32] Plaintiff filed a Motion to Remand on July 1, 2021,[33] and filed a

---

[29]Id. at 5 ¶¶ 12-13.

[30]Certified English Translation of Plaintiff's Counterclaim in ICC Arbitration, Exhibit C to Exterran's Motion to Compel, Docket Entry No. 4-3, pp. 6-7 ¶¶ 48-52.

[31]Defendants' Notice of Removal, Docket Entry No. 1, p. 1.

[32]Exterran's Motion to Compel, Docket Entry No. 4.

[33]Plaintiff's Motion to Remand, Docket Entry No. 12.

-8-

response to Exterran's Motion to Compel on July 6, 2021.[34]
Defendants filed a reply on July 13, 2021,[35] and Plaintiff filed a
sur-reply on July 23, 2021.[36]

## II. **Legal Standard**

In enacting the Federal Arbitration Act ("FAA"), 9 U.S.C.
§§ 1, et seq., Congress "expressed a strong policy favoring
arbitration before litigation, and the courts are bound to take
notice of this broad policy as well as specific statutory
provisions in dealing with arbitration clauses in contracts."
J.S. & H. Construction Co. v. Richmond County Hospital Authority,
473 F.2d 212, 214-215 (5th Cir. 1973). The FAA provides that "[a]
written provision in any . . . contract evidencing a transaction
involving commerce to settle by arbitration a controversy
thereafter arising out of such contract or transaction . . . shall
be valid, irrevocable, and enforceable, save upon such grounds as
exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. Section 4 of the FAA permits a party to seek an
order compelling arbitration if the other party has failed to
arbitrate under a written agreement. 9 U.S.C. § 4.

---

[34]Plaintiff's Response, Docket Entry No. 13.

[35]Exterran Energy Solutions, LP and Exterran Corporation's
Reply in Support of Their Motion to Compel Arbitration ("Exterran's
Reply"), Docket Entry No. 14.

[36]Plaintiff's Sur-Reply Brief in Opposition to the Motion to
Compel Arbitration ("Plaintiff's Sur-Reply"), Docket Entry No. 18.

Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 687 (5th Cir. 2018) (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)). District courts within the Fifth Circuit apply a summary judgment-like standard when considering this question. Johnson v. CMI Group, Civil Action No. 3:19-CV-2361-N, 2020 WL 8461518, at *4 (N.D. Tex. Dec. 29, 2020), report and recommendation adopted, Civil Action No. 3:19-CV-2361-N, 2021 WL 424279 (N.D. Tex. Feb. 8, 2021). "[T]he moving party must first 'present evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" Id. (quoting Clutts v. Dillard's, Inc., 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)). "Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate." Id. (citing Hancock v. American Telephone and Telegraph Co., Inc., 701 F.3d 1248, 1261 (10th Cir. 2012)).

"[I]n step two of the analysis, determining the scope of a valid arbitration agreement . . . we apply the federal policy and

resolve ambiguities in favor of arbitration." Klein, 710 F.3d at 236-37 (internal citation omitted). "[W]hen a court interprets [] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 109 S. Ct. 1248, 1254 (1989)).

### III. **Analysis**

#### A. **The Arbitration Agreements Are Valid**

Whether there is a valid arbitration agreement is governed by ordinary state-law contract principles. Klein, 710 F.3d at 236. "Under Texas law, a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" Huckaba, 892 F.3d at 689 (quoting In re Capco Energy, Inc., 669 F.3d 274, 279-80 (5th Cir. 2012)). "As it relates specifically to arbitration agreements, the '[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement.'" Lizalde v. Vista Quality Markets, 746 F.3d 222, 225 (5th Cir. 2014) (quoting In re 24R, Inc., 324 S.W.3d 564, 566 (Tex. 2010)).

The Compression Contract states that

[t]he Parties shall endeavor to resolve any dispute or
claim arising from the performance, interpretation, or
breach of this Agreement among themselves. To this end,
either party will notify the other party by means of a
substantiated notice about the disputed matter, claim,
interpretation or alleged breach. Once the notification
is received, the Parties will have fifteen (15) business
days to resolve the matter raised. Any dispute not
amicably resolved within the aforementioned period, or
any of its extensions agreed to in writing by mutual
agreement between the Parties will be definitively
resolved in accordance with the Rules of Arbitration of
the International Chamber of Commerce . . . .[37]

The Conditioning Contract contains a substantially identical
arbitration clause.[38] The 2020 Sales Agreement provides that "[i]n
the event of a dispute, this Agreement shall be submitted to the
conciliation, arbitration, jurisdiction and applicable law set
forth in section 35 of the [Conditioning Contract]."[39] The
arbitration clauses provide that any dispute arising out of the
Contracts shall be arbitrated in the City of Monterrey, Nuevo León,

---

[37]Certified English Translation of Compression Contract
Excerpts, Exhibit D to Exterran's Motion to Compel, Docket Entry
No. 4-4, p. 5.

[38]Certified English Translation of Conditioning Contract
Excerpts, Exhibit E to Exterran's Motion to Compel, Docket Entry
No. 4-5, p. 5.

[39]2020 Sales Agreement, Exhibit E to Defendants' Notice of
Removal, Docket Entry No. 1-5, p. 8 ¶ 14; see also Certified
English Translation of Conditioning Contract Excerpts, Exhibit E to
Exterran's Motion to Compel, Docket Entry No. 4-5, p. 2
(establishing that the Conditioning Contract is synonymous with the
Master Agreement referenced in the unaltered text of the 2020 Sales
Agreement).

-12-

Mexico, under the ICC Arbitration Rules in accordance with the laws of the United Mexican States.[40]

The terms of the arbitration clauses are detailed and unequivocal.  Plaintiff does not dispute that it agreed to these terms.  The Compression and Conditioning Contracts appear to bear signatures of both Plaintiff's and Exterran Mexico's legal representatives,[41] as does the 2020 Sales Agreement.[42]  The court concludes that Plaintiff objectively manifested its intent to be bound by the terms of the arbitration clauses in the Contracts, and that the arbitration clauses are valid.

## B.    The Dispute Is Within the Scope of the Arbitration Clauses

The Fifth Circuit distinguishes between broad and narrow arbitration clauses.  Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993).  If the clause is broad, the action should be referred to arbitration.  Id. Arbitration clauses containing "any dispute" language are of the broad type.  Id. at

---

[40]Certified English Translation of Compression Contract Excerpts, Exhibit D to Exterran's Motion to Compel, Docket Entry No. 4-4, p. 5; Certified English Translation of Conditioning Contract Excerpts, Exhibit E to Exterran's Motion to Compel, Docket Entry No. 4-5, p. 5; 2020 Sales Agreement, Exhibit E to Defendants' Notice of Removal, Docket Entry No. 1-5, p. 8 ¶ 14.

[41]Compression Contract, Exhibit B to Defendants' Notice of Removal, Docket Entry No. 1-2, p. 34; Conditioning Contract, Exhibit C to Defendants' Notice of Removal, Docket Entry No. 1-3, p. 58.

[42]2020 Sales Agreement, Exhibit E to Defendants' Notice of Removal, Docket Entry No. 1-5, p. 9.

755.

The arbitration clauses in the Compression and Conditioning Contracts state that "any dispute" must be arbitrated.[43]  The 2020 Sales Agreement incorporates this same broad language by referring to the arbitration clause in the Conditioning Contract.[44]  The court thus concludes that the scope of the clauses is broad and arbitration is proper.  See Hornbeck, 981 F.2d at 754.

Plaintiff argues that its claims are not arbitrable because its petition alleges tort claims, while the ongoing ICC Arbitration involves contractual disputes.[45]  But broad arbitration clauses "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  Pennzoil Exploration and Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).  "[I]t is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable."  Id. at 1068.  Moreover, "arbitration should not be denied 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an

---

[43]Certified English Translation of Compression Contract Excerpts, Exhibit D to Exterran's Motion to Compel, Docket Entry No. 4-4, p. 5; Certified English Translation of Conditioning Contract Excerpts, Exhibit E to Exterran's Motion to Compel, Docket Entry No. 4-5.

[44]2020 Sales Agreement, Exhibit E to Defendants' Notice of Removal, Docket Entry No. 1-5, p. 8 ¶ 14.

[45]Plaintiff's Response, Docket Entry No. 13, p. 1.

-14-

interpretation which would cover the dispute at issue.'" Safer v. Nelson Financial Group, Inc., 422 F.3d 289, 294 (5th Cir. 2005) (quoting Personal Security and Safety Systems, Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002)).

Plaintiff's tortious interference claim arises from the MP's Orders, which were issued as a result of Exterran Mexico's criminal complaints against Plaintiff.[46]  The criminal complaints, in turn, relied on the Contracts to establish that Exterran Mexico's rights had been violated.[47]  But for the Contracts, Plaintiff's tortious interference claim would not exist.   The court concludes that Plaintiff's claim "touch[es]" matters covered by the Contracts, see Pennzoil, 139 F.3d at 1068, and that the arbitration clauses are "'susceptible of an interpretation which would cover the dispute at issue.'" See Safer, 422 F.3d at 294.   Accordingly, the court will grant Exterran's Motion to Compel.

## C.   Intertwined Claims Estoppel

Plaintiff appears to imply that it would be improper to compel

---

[46]Plaintiff's Original Complaint, Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1, pp. 5-6 ¶¶ 12-15.

[47]Certified English Translation of First Complaint of Facts, Exhibit F to Exterran's Motion to Compel, Docket Entry No. 4-6, pp. 9-10 ¶¶ 1-3; Certified English Translation of Second Complaint of Facts, Exhibit G to Exterran's Motion to Compel, Docket Entry No. 4-7, p. 4 ¶ 2 (stating that the Contracts established Exterran's ownership of the equipment and infrastructure that Plaintiff was allegedly preventing Exterran from accessing).

arbitration of its claims against Exterran because the Contracts are between Plaintiff and Exterran Mexico.[48]  Although Exterran Mexico filed the criminal complaints that are the basis of Plaintiff's tortious interference claim, Plaintiff has only sued Exterran Mexico's parent companies — Exterran Corp. and Exterran L.P. (and the President of both companies, Andrew Way) — in this action.  Exterran L.P. is a signatory to the 2020 Sales Agreement[49] and a party to the onging arbitration in Mexico.[50]

"Texas courts have recognized that 'a non-signatory can be bound to, or permitted to enforce, an arbitration agreement' based on equitable estoppel grounds."  Hays v. HCA Holdings, Inc., 838 F.3d 605, 609, n.1 (5th Cir. 2016) (quoting G.T. Leach Builders, LLC v. Sapphire V.P., LP, 458 S.W.3d 502, 524 (Tex. 2015)).  Under the theory of intertwined claims estoppel, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where . . . 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the

---

[48]Plaintiff's Response, Docket Entry No. 13, p. 9 ("[T]he contracts with Exterran Mexico and the controversies related to those contracts have nothing to do with the claims in the instant case.").

[49]2020 Sales Agreement, Exhibit E to Defendants' Notice of Removal, Docket Entry No. 1-5, p. 9.

[50]Exterran Energy de México, S. de R.L. de C.V. y Exterran Energy Solutions, L.P. v. Iberoamericana de Hidrocarburos, S.A. de C.V., ICC Case No. 25918/JPA, In the Court of Arbitration of the International Chamber of Commerce (attached as Exhibit F to Defendants' Notice of Removal, Docket Entry No. 1-6).

agreement that the estopped party has signed.'" <u>JLM Industries, Inc. v. Stolt-Nielsen SA,</u> 387 F.3d 163, 177 (2d Cir. 2004). Texas courts have applied this doctrine in "instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings." <u>In re Merrill Lynch Trust Co. FSB,</u> 235 S.W.3d 185, 194 (Tex. 2007).

Plaintiff's suit against Exterran Corp. — Exterran Mexico's "nonsignatory principal[]" — rests on the allegation that Exterran "pull[ed] the strings" by directing Exterran Mexico to file criminal complaints against Plaintiff.[51] <u>See In re Merrill Lynch,</u> 235 S.W.3d at 194. For reasons explained above, the court has concluded that Plaintiff's tortious interference claim depends on and arises from the Contracts. The court therefore concludes that Plaintiff's claim is "intertwined with" the Contracts and that Defendants may properly compel arbitration regardless of their status as signatories.

## IV. <u>Conclusion and Order</u>

For the reasons explained above, Exterran Energy Solutions, LP's [and Exterran Corporation's] Motion to Compel Arbitration (Docket Entry No. 4) is **GRANTED**. This action is **STAYED**. The

---

[51]Plaintiff's Original Complaint, Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1, p. 5 ¶¶ 12-13.

parties will submit a status report on October 15, 2021, and every 60 days thereafter.  The October 1, 2021, initial pretrial and scheduling conference is **CANCELED**.

    **SIGNED** at Houston, Texas, on this 19th day of August, 2021.

_____
                 SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-18-